[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10821

_____

D.C. Docket No. 1:12-cr-20265-DMM-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIANELA TERRERO,
DAYMI FUENTES GIL,
OLGA MARTINEZ RODRIGUEZ,
JOEL LOYOLA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 3, 2014)

Before HULL, BLACK and FARRIS,* Circuit Judges.

PER CURIAM:

_____

*Hon. Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

The Defendants were involved in a scheme in which a home healthcare company, Superstar, would pay for them 1) to receive Medicare payments for care provided by Superstar or 2) to refer other patients for Superstar's services. The Defendants were charged with substantive violations of the Anti-Kickback Statute, 42 U.S.C. §§ 1320a-7b(b)(1)(A), (1)(B), (2)(B), and conspiracy,18 U.S.C. § 371. A jury found the Defendants guilty on all counts. The district court sentenced Defendant Terrero to 16 months incarceration, three years of supervised release, and $24,447.80 in restitution. Defendant Fuentes-Gil was sentenced to 15 months incarceration and three years of supervised release, and $31,702.62 in restitution. Defendant Martinez was sentenced to 15 months incarceration and three years of supervised release, and $31,702.62 in restitution. Defendant Loyola was sentenced to 24 months incarceration and three years of supervised release, and $14,988.04 in restitution. The Defendants appeal their convictions and sentences. This Court has jurisdiction under 28 U.S.C. § 1291.

## I. Sufficiency of the Evidence

The evidence was sufficient to support all convictions. A jury verdict will only be overturned on the basis of evidentiary insufficiency if no reasonable juror could have found the defendant guilty beyond a reasonable doubt. *United States v. Vernon*, 723 F.3d 1234, 1266 (11th Cir. 2013). Here there was sufficient evidence

showing that the defendants acted "voluntarily and purposely, with the specific intent to do something the law forbids…." *Vernon*, 723 F.3d at 1256. There is testimony that Terrero showed up to the Superstar office and threatened to call Medicare and the police if she did not receive payment for her referrals. There is evidence that Martinez and Fuentes-Gil, after learning that their legitimate rheumatologist would not certify them as homebound, then went to a podiatrist in order to get certification and receive a $900 kickback from Superstar. On the record, a reasonable jury could conclude that the Defendants acted with knowledge of the illegality of their conduct.

Martinez also argues separately that the evidence was insufficient to support her conspiracy charge, as she was not aware of the other kickbacks taking place. For the conspiracy charge to be upheld, there must be evidence of knowledge of agreement to an unlawful plan. *United States v. Chandler*, 388 F.3d 796, 806 (11th Cir. 2004). Here, Martinez went beyond merely receiving her own kickback. She attempted to recruit a new Medicare beneficiary to include in the Superstar scheme (Barbara). A reasonable jury could properly find knowledge of the larger scheme.

Loyola attempts to incorporate these evidentiary sufficiency challenges as his own, but evidentiary sufficiency claims cannot be adopted. *United States v. Cooper*, 203 F.3d 1279, 1285 n.4 (11th Cir. 2000).

## II. Expert Testimony

It was not error for the district court to admit the expert testimony of nurse Gale Meade, including her opinion that Martinez was not homebound under the Medicare statute. District courts' evidentiary rulings are reviewed for abuse of discretion. *United States v. Stephens*, 365 F.3d 967, 973-74 (11th Cir. 2004). Evidence must be relevant, FED. R. EVID. 401(a)(b), but even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. FED. R. EVID. 403.

Expert testimony as to the homebound status of Martinez was relevant to the Anti-Kickback prosecution: if it were true that Martinez should not have been certified as "homebound," one could reasonably conclude that the payments she received were functioning as "kickbacks."

This testimony did not violate Rule 403. While it could be argued that Mead's testimony focused the jury's attention towards something *more* relevant to a Medicare fraud prosecution, "homebound" status was also relevant for the Anti-

4

Kickback case. The probability of confusion is not sufficient to warrant exclusion of the testimony.

### III. Jury Instructions

The district court did not err in refusing to grant a requested jury instruction on the law of multiple conspiracies. A district court's refusal to grant a requested jury instruction is reviewed for abuse of discretion. A refusal to grant an instruction on multiple conspiracies will only result in reversal if the record reflects a factual basis for a finding of multiple conspiracies. *United States v. Orr*, 825 F.2d 1537, 1542-43 (11th Cir. 1987). The fact that the patients only dealt directly with Superstar employees and did not know the specific identities of other patients does not convert the single conspiracy into many. *Id*. There is no evidence of separate networks operating independently of the central Superstar core. *Id*. There *is* evidence that the Defendants knew that other people were receiving kickbacks—all acted as recruiters for other patients, even when they were patients themselves.

### IV. Sentencing Issues

The record reflects no sentencing error. Questions of law regarding the Sentencing Guidelines are reviewed de novo, *United States v. Huff*, 609 F.3d

1240, 1245 (11th Cir. 2010), while factual findings are reviewed for clear error. *United States v. Bane*, 720 F.3d 818, 827 (11th Cir. 2013).

The district court did not err in determining the offense level. U.S.S.G. § 2B4.1 directs that the total offense level will be determined by the greater of the "value of the bribe or the improper benefit to be conferred." *Huff*, 609 F.3d at 1245. The "improper benefit" to be conferred is not, as the Defendants urge, the same as the kickback or the bribe: it "refers to the value of the action to be taken or effected in return for the bribe." U.S.S.G. § 2B4.1, cmt. 2; *see also Huff*, 609 F.3d at 1245 (explicitly equating "bribe" with kickback). On this record, that was the value of the Medicare payments used by Superstar to treat patients.

It was not error to fail to credit allegedly medically necessary payments when determining the value of the improper benefit conferred. The Defendants can point to no authority that dictates that otherwise legitimate payments can offset such a value. While the Defendants argue that medically necessary payments cannot be "improper," the impropriety comes from the illegitimacy of the means by which the payments were procured: a kickback.

Medical necessity *is* relevant for the determination of the amount of restitution, since restitution is based on actual "loss." *Huff*, 609 F.3d at 1247; *see Bane*, 720 F.3d at 828 (citing *United States v. Vaghela*, 169 F.3d 729, 736 (11th

6

Cir. 1999)). The district court found as a fact that all but one of the Defendants' treatments were medically unnecessary. The efforts undertaken by the Defendants to circumvent the normal procedures for receiving "homebound" certification support such a finding. The district court made no such finding with respect to Loyola, who failed to make a medical necessity argument to the sentencing judge. A plain error review reveals nothing in the record to suggest that Loyola's treatments were medically necessary. *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005).

We reject Martinez and Fuentes-Gil's argument that the district court should not have combined the amount of the improper benefits attributed to each. U.S.S.G. § 1B1.3 provides that the foreseeable harm of co-conspirators may be attributed to other members of the conspiracy. The two women lived together and both were present during the conspiratorial discussions. The improper benefit that each received was foreseeable to the other.

**AFFIRMED**.